# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## 13-11455-FF

---

### DORIS THEWS,

Plaintiff-Appellant,

v.

### WAL-MART STORES, INC.

Defendant-Appellee.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

---

## **APPELLEE'S RESPONSE BRIEF**

QUINTAIROS, PRIETO WOOD & BOYER, P.A.
**THOMAS A. VALDEZ**
Florida Bar No. 0114952
4905 West Laurel Street, Suite 200
Tampa, Florida 33607
Telephone:  (813) 286-8818
Facsimile:   (813) 286-9998
Counsel for Defendant-Appellee

i

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
4905 WEST LAUREL STREET, SUITE 200, TAMPA, FLORIDA 33607 ♦ TEL: (813) 286-8818

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, 26.1-2, and 26.1-3, undersigned counsel for Appellee, WAL-MART STORES, INC., hereby certifies that the following is a list of the persons and entities that have an interest in the outcome of this case in addition to the persons and entities already listed by Appellant in her Initial Brief:

1. Wal-Mart Stores East, L.P., a wholly owned subsidiary of Appellee, Wal-Mart Stores, Inc.

2. Wal-Mart Stores Associates, Inc., an entity affiliated with Appellee, Wal-Mart Stores, Inc.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
4905 WEST LAUREL STREET, SUITE 200, TAMPA, FLORIDA 33607 ◆ TEL: (813) 286-8818

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Wal-Mart, Inc. ("Wal-Mart"), respectfully asserts that oral argument is not necessary in the case because the issues on appeal can readily be decided by the Court based on the Briefs of the Parties. The foregoing notwithstanding, Appellee would welcome the opportunity to present oral argument if, after review of the Briefs, the Court determines the such argument would assist it in deciding some or all of the issues on appeal.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
4905 WEST LAUREL STREET, SUITE 200, TAMPA, FLORIDA 33607 ♦ TEL: (813) 286-8818

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE ..................... ii

DISCLOSURE STATEMENT ................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF AUTHORITIES ................................................................ ix,x

TABLE OF RECORD REFERENCES .................................................... xi

STATEMENT OF THE CASE AND FACTS ......................................... 1

STANDARDS OF REVIEW ................................................................ 11

SUMMARY OF ARGUMENT .............................................................. 12

ARGUMENT ................................................................................. 14

I.    THE DISTRICT COURT CORRECTLY GRANTED WAL-MART'S MOTION FOR JUDGMENT AS A MATTER OF LAW ................... 15

A.    *THE APPELLATE CANNOT ESCAPE THE FACT THAT THE COMPLAINT AT ISSUE IS PREMISED EXCLUSIVELY ON A THEORY OF DIRECT LIABILITY* .......................................................... 16

1.    There is no merit to Appellant's argument that the allegations in her Complaint assert a claim based on "general negligence" or that the specific allegations that Wal-Mart breached a duty to her are mere "alternate theories" of recovery .................................................... 16

2.    There is no merit to the Appellant's argument that the trial court improperly focused on less than the entire complaint in rendering its decision .......... 19

iv

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
4905 WEST LAUREL STREET, SUITE 200, TAMPA, FLORIDA 33607 ♦ TEL: (813) 286-8818

3.  There is no merit to Appellant's argument that the allegations in her Complaint were only framed as they were because she did not have the knowledge to allege anything additional or different until some point "subsequent to the discovery process" ............................................20

a.  *Any information Appellant learned about the incident at issue was learned during the discovery process; not "subsequent to [it]"*................................20

b.  *No former employee or employees of Wal-Mart ever "admitted negligence" in any way, shape or form*............................................................................23

c.  *Section Conclusion*............................................................................................24

2.  Appellant's argument that the allegations of her complaint were rendered "superfluous" by "numerous admissions" of negligence or an admission of liability by Wal-Mart is legally and factually meritless.......................25

a.  *None of Wal-Mart current or former employees ever made an "admission" of negligence in this case* .....................................................................25

b.  *Wal-Mart did not, at any point, "admit liability" in this case*........................ 25

c.  *Section Conclusion* ........................................................................................ 25

3.  The only burden the trial court (properly) imposed on Appellant was the burden to prove the case she plead against Wal-Mart as required by the controlling law..................................................................................26

B.  *THE DISTRICT COURT CORRECTLY RULED THAT APPELLANT WAS REQUIRED TO PRESENT EXPERT TESTIMONY OR SOME EVIDENCE TO ESTABLISH THE APPLICABLE STANDARD OF CARE BEFORE ITS DEFECTIVE DESIGN AND INADEQUATE MAINTENANCE CLAIMS COULD PROPERLY BE SUBMITTED TO THE JURY*................................28

C.  *THE TRIAL COURT'S DECISION TO GRANT WAL-MART'S MOTION FOR JUDGMENT AS A MATTER OF LAW WAS UNAFFECTED BY APPELLANT'S ELEVENTH HOUR EFFORT TO INJECT THE ISSUE OF RES IPSA LOQUITUR AND VICARIOUS LIABILITY INTO THIS CASE*
...........................................................................................33

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
4905 WEST LAUREL STREET, SUITE 200, TAMPA, FLORIDA 33607 ♦ TEL: (813) 286-8818

1.  The district court properly ruled that Appellant could not avoid the entry of judgment as a matter of law in Wal-Mart's favor via her "eleventh hour" attempt to inject the issue of *res ipsa loquitur* into this case................34

a.  Appellant did not plead, present, or otherwise appropriately raise the issue of *res ipsa loquitur*...............................................................................34

b.  Based on what Appellant did plead and present, this was not a *Res Ipsa Loquitur* case...................................................................................36

c.  Conclusion *re res ipsa loquitur*................................................................37

2.  Appellant did not plead, present, or otherwise appropriately raise a the issue of vicarious liability...................................................................................38

II.  THE DISTRICT COURT CORRECTLY DENIED APPELLANT'S UNDULY UNTIMELY F.R.C.P 15(b) MOTIONS TO AMEND THE COMPLAINT AND MOTION FOR CONTINUANCE.....................43

A.  *THE TRIAL COURT ACTED WITHIN ITS DISCRETION IN DENYING APPELLANT'S MOTION TO AMEND HER COMPLAINT UNDER RULE 15(b)(1)*.................................................................................................................43

1.  The district court's denial of Appellant's motion to amend was a valid exercise of the court's discretion given that Appellant's motion was not made in response to an objection to an effort to admit evidence that was outside the scope of the pleadings...............................................................44

2.  The district court's denial of Appellant's motion was a valid exercise of the court's discretion given Appellant's unwarranted delay in making that motion...................................................................................................46

3.  The district court's denial of Appellant's motion to amend was a valid exercise of the court's discretion given the fact that the Appellant's delay in filing the motion was a tactical decision........................................................47

4.  The district court's denial of Appellant's motion was a valid exercise of the court's discretion because Wal-Mart would have been prejudiced if

vi

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
4905 WEST LAUREL STREET, SUITE 200, TAMPA, FLORIDA 33607 ♦TEL: (813) 286-8818

Appellant had been allowed to amend her complaint and change her theory after Wal-Mart had rested her case and obtained a judgment as a matter of law was granted...............................................................................48

B.    *THE TRIAL COURT ACTED WITHIN ITS DISCRETION IN DENYING APPELLANT'S MOTION TO AMEND HER COMPLAINT UNDER F.R.C.P 15(b)(2)*..................................................................................51

1.    Wal-Mart did not expressly or implicitly "consent" to the trial of the unpled and unpresented claims Appellant sought to amend her complaint to add ............................................................................................ 51

2.    The trial court did not abuse its discretion in determining Appellant's unpled claims were not tried by consent............................................................53

D.    *THERE WAS NO LEGITIMATE BASIS UPON WHICH THE TRIAL COURT COULD HAVE GRANTED APPELLANT'S MOTION FOR CONTINUANCE* ..........................................................................................54

CONCLUSION........................................................................................56

CERTIFICATE OF SERVICE.........................................................................57

CERTIFICATE OF COMPLIANCE...................................................................57

# TABLE OF AUTHORITIES

Authority                                                                      Page #

*Brown v. Cooper Clinic, P.A.*, 734 F.2d 1298 (8th Cir. 1984)..................49, 53

*Carter v. Supermarkets Gen. Corp.,* 684 F.2d 187, 192 (1st Cir.1982)........43,44

*Circa Ltd. v. City of Miami,* 79 F.3d 1057, 1063 (11th Cir. 1996).......................11

*City of New Smyrna Beach Utilities Commission v. McWhorter,* 418 So.2d 261, 262 (Fla.1982)............................................................................34

*Cooper Hotel Services, Inc. v MacFarland,* 662 So. 2d 710 (2d DCA 1995) ................................................................................31, 32, 33

*Craft v. U.S.*, 233 F.3d 358, 371 (6th Cir. 2000)........................................53

*Designers Tile Intern. Corp. v. Capitol C Corp.,* 499 So. 2d 4 (Fla. 3d DCA 1986) ................................................................................39

*Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 598 n.2 (5th Cir. 1981) ................................................................................49, 55

*Farkas v. Texas Instruments, Inc.,* 429 F.2d 849, 851 (1st Cir.1970)...............44

*Farr v. Gulf Agency*, 74 So. 3d 393 (Ala. 2011).......................................46

*Figgie Intern. Inc. v. Miller*, 966 F.2d 1178 (7th Cir. 1992)..........................46

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) ................................................................................43, 44

*Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)...............48

*Goldschmidt v. Holman*, 571 So. 2d 422 (Fla. 1990)..................................39

*Goodyear Tire & Rubber Co. v. Hughes Supply, Inc.,* 358 So.2d 1339 (Fla.1978) ................................................................................35, 38

*Goolsby v. Gain Technologies, Inc.,* 362 Fed.Appx. 123, 128, 132 (11th Cir. 2010)
…………………………………………………………………………………...29, 30

Green Leaf Nursery v. E.I. DuPont DeNemours & Co., 341 F. 3d 1292. 1300
(11th Cir. 2003)………………………………………………………………...11

*Insurance Co. of the West v. Island Dream Homes, Inc.*, 679 F.3d 1295
(11th Cir. 2012)…………………………………………………………29, 30, 31

*James v. McCaw Cellular Communications, Inc.*, 988 F.2d 583 (5th Cir. 1993)
……………………………………………………………………………….....43

*Jones v. Hamelman*, 869 F.2d 1023 (7th Cir. 1989)………………………………44

*Marrero v. Goldsmith*, 486 So. 2d 530 (Fla. 1986)…………………………………37

*Morrison Enterprises, LLC v. Dravo Corp.*, 638 F.3d 594 (8th Cir. 2011)……….47

*Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d
1118 (11th Cir. 1993)…………………………………………………………..44

*Payton v. Abbott Labs,* 780 F.2d 147 (1st Cir. 1985)……………………………..47

*Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1296 (11th Cir. 2005)……………….11

*Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011 (2d Cir.
1989)……………………………………………………………………………43

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126 (Fla. 1985)……………….39

*Union Planters Nat'l Leasing Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir.1982)
………………………………………………………………………………...48, 55

Rules, Statutes, and Other Authorities                                 Page #

401 U.S. 974, 91 S. Ct. 1193, 28 L.Ed.2d 324 (1971)……………………………44

F.R.C.P. 15(b)(2)……………………………………………………………….51

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
4905 WEST LAUREL STREET, SUITE 200, TAMPA, FLORIDA 33607 ♦ TEL: (813) 286-8818

Fla. Std. Jur. Instr. 401.7……………………………………………………….4

Fla. Std. Jur. Instr. 401.14 and 402.9……………………………………………..4

# TABLE OF RECORD REFERENCES

| Brief  Page # | Document | Docket # |
|---|---|---|
| 1 | Appellant's Complaint | 1 |
| 2 | Case Management and Scheduling Order | 11 |
| | Motion for Extension of Time to Complete Discovery | 30 |
| 2 | Order extending deadline for completion of Discovery | 32 |
| 3 | Joint Pre-Trial Statement | 36 |
| 4 | Notice of Jury Trial | 53 |
| 4 | Proposed Jury Instructions | 57 |
| 11 | Oral Order granting Wal-Mart's Motion for Judgment on the Pleadings | 70-71 |
| 11 | Judgment | 72 |
| 11 | Appellant's oral motion to amend her complaint or for continuance to allow amendment | 73 |
| 11 | Oral Order denying Appellant's oral motion to amend her complaint or for continuance to allow amendment | 74 |

QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
4905 WEST LAUREL STREET, SUITE 200, TAMPA, FLORIDA 33607 ♦TEL: (813) 286-8818

## STATEMENT OF THE CASE AND FACTS

This is a personal injury case relating to an incident that occurred on December 4, 2010, at Wal-Mart store #725, located on 36205 U.S. Highway 27, Haines City, Florida. Appellant's Complaint (D.E. 1), filed on August 15, 2011, includes allegations of duty, breach, causation, and damages. The most important of these, for purposes of this Appeal, are Appellant's allegations of breach, which are enumerated in paragraph 20 of the Complaint (D.E. 1). In that paragraph, Appellant very specifically, alleged that Wal-Mart (as opposed to its employees) breached its duty to her in one or more of the following ways:

a. Failing to properly train its employees on how to handle shopping carts in the entry area/shopping cart vestibule for which WAL-MART is responsible under the theory of *respondeat superior;*

b. Improperly designing the shopping cart vestibule area to prevent its employees from pushing shopping carts into business invitees entering the store;

c. Improperly maintaining the shopping cart vestibule area to prevent its employees from pushing shopping carts into business invitees entering the store;

d. Failing to install a threshold or other similar device which would have prevented the shopping carts from striking the Plaintiff;

e. Failing to provide a clear line of sight for its employees returning shopping carts to where customers would be taking shopping carts; and/or

f. Failing to warn customers that the shopping carts might be pushed towards them as they went to reach for a shopping cart.

1

These allegations framed the claim Appellant chose to plead against Wal-Mart: a claim solely and exclusively against based on the theory that **the company** (as opposed to its employees) breached a duty to Appellant in one of six different ways; and that Wal-Mart (the company) should be directly liable to Appellant for negligence as a result.

On or about, November 1, 2011, the district court entered a Case Management and Scheduling Order (D.E. 11) requiring the parties to complete discovery by October 22, 2012. However, on or about October 17, 2012, Appellant's trial counsel filed a motion for extension of time to complete discovery (D.E. 30). That motion was granted and extended the deadline for completion of discovery until November 26, 2012 (D.E. 32).

During the course of discovery, a number of depositions were taken. These depositions included the depositions of former Wal-Mart employees Wesley Patterson, taken by Appellant's Counsel on October 11, 2012 (prior to the original discovery cutoff date), and Josephat Eames, taken by Appellant's Counsel on November 15, 2012 (prior to the extended discovery cut-off date). The depositions of these individuals did nothing to change Appellant's claim or strategy; as evidenced by the fact that, at no time between the taking of those two depositions and the trial of this case, did Appellant move or otherwise request the opportunity

2

to amend her Complaint pursuant to Rule 15 F.R.C.P. to add additional claims or theories against Wal-Mart.

The parties prepared a Joint Pre-Trial Statement (D.E. 36), which was filed on January 31, 2013; more than a month after the discovery cut-off date. That jointly prepared document contains no references to a theory of general negligence, a theory of vicarious liability or the doctrine of *res ipsa loquitur*. In fact, in section 11, of the joint statement, titled "Concise Statement of Facts Remaining to Be Litigated," Appellant acknowledged the only facts/questions remaining to be resolved in terms of Wal-Mart's alleged breach of duty were:

    a.   Whether Wal-Mart was negligent in the training and supervision of its employees regarding the use of shopping cart return machinery to re-stock the shopping cart vestibule area.

    b.   Whether Wal-Mart improperly maintained their shopping cart vestibule area in Wal-Mart Store #725, Haines City, Polk County, Florida.

    c.   Whether Wal-Mart failed to provide adequate opportunity and/or a clear line of sight to its employees that re-stock the shopping cart vestibule area so that they may do so in a safe manner so that the failure to do so was the cause of the accident.

    d.   Whether Wal-Mart breached a duty to warn its customers, specifically Ms. Thews, regarding the hazards that exist in Wal-Mart Store #725, Haines City, Polk County, Florida in accessing shopping carts located in the shopping cart vestibule area of its store so that the failure to do so was the cause of the accident.

    e.   Whether Wal-Mart breached its duty to provide a safe environment, free of hazards, for its business invitees, including the Plaintiff, Ms. Thews.

3

A Pre-Trial Status Conference was held on February 14, 2013, before District Judge Richard Lazzara (trial judge); more than two and a half months after the discovery cut-off date. Immediately following that pre-trial status conference, the district court entered a Notice of Jury Trial (D.E. 53) scheduling the trial of this case to begin on March 18, 2013. At no time before or during that Pre-Trial Status Conference did Appellant move for or request an opportunity to amend her complaint under F.R.C.P. 15 or request a continuance of the scheduled trial to allow her to amend her complaint to add a claim or claims against Wal-Mart.

Immediately prior to trial, per the Notice of Jury Trial (D.E. 53), the parties jointly prepared and agreed to Proposed Jury Instructions (D.E. 57). Copies of those instructions were filed on behalf of the parties by Wal-Mart's Trial Counsel, on or about February 25, 2013; three months after the discovery cut-off date. These jointly prepared Proposed Jury Instructions contain instructions to the jury to guide their deliberations on the direct liability claim pled by Appellant; the sole claim provided by the Appellant. However, they do **not** contain any instruction or instruction that even arguably sought to educate or instruct the jury regarding: (1) the concept of vicarious liability (e.g. Fla. Std. Jur. Instr. 401.7); or (2) the concept of *res ipsa loquitur* (e.g. Fla. Std. Jur. Instr. 401.14 and 402.9).

The trial of this case began on March 18, 2013. In her opening statement, Appellant's Counsel stated the "crux of this case is all about safety rules" (Tr., Vol.

4

I., 13: 20-21 and 20:21-25). She talked about Wal-Mart's obligation as "one of the largest corporations in the world" to follow "safety rules" (Tr., Vol. I., 13: 20-21 and 20:21-25). She stated "Wal-Mart has an obligation to make sure that it has safety rules in place so that when people come into the store and take a cart they are not hurt. This case is all about how Wal-Mart violated that safety rule...this is a case about how [the subject] Wal-Mart store and how Wal-Mart doesn't have proper safety rules in place...[to make the entry way to the subject store safe]" (Tr., Vol. I., 13-14). Counsel for Wal-Mart properly objected to these statements by Appellant's Counsel based on the fact the law imposes on Wal-Mart the duty to use reasonable care as opposed to some undefined "safety rules" (Tr., Vol. I., 14). The district court responded by reminding the jury it had explained what negligence was and that the Appellant had the burden to prove negligence. *Id.*

However, Appellant's Counsel was virtually unfazed. She continued to use the word "rule" and the term "standard of care" interchangeably; and, most importantly for purposes of this appeal, **consistent with the allegations of her Complaint** (and the direct liability theory of recovery framed by the allegations of that pleading) stated (Tr., Vol. I., 15-16): "Wal-Mart violated this standard of care or the safety rule by designing a store that has a concrete block wall up to her (indicating) where the person who's operating the remote cart pusher can't see into the store unless he or she goes and opens up the plastic strips and looks inside the

5

store ... Wal-Mart violated the rule because there's no way to stop the carts from going forward...Wal-Mart violated the reasonable duty standard of care, the safety rule, by failing to assign two cart pushers...Wal-Mart also violated the safety rule by not having [queues] to bring the carts in...Wal-Mart violated the rule because there was no lip in front of where those carts go to stop the carts from moving forward...Wal-Mart violated the safety rule because it didn't train the cart pusher [to stand inside the store when using the automatic cart pusher to move carts in]...There's numerous ways Wal-Mart violated the safety rule and that's what this case is about" (Tr., Vol. I., 15-16).

Appellant's Counsel briefly discussed the anticipated testimony of former Wal-Mart employees Wesley Patterson and Eames Josephat during her opening (Tr., Vol. I., 17-18). However, during that discussion, she did not assert that the evidence would show that either of those individuals had acted negligently; and did not assert that she had any intention of asking the jury to hold Wal-Mart vicariously liable for the actions of Mr. Patterson or Mr. Josephat. Instead, she discussed their involvement in the incident (Tr., Vol. I., 17-18), without ever ascribing a specific breach of duty to them or asserting generally that they had acted negligently; and then, consistent with the theme framed in her Complaint, asserted, expressly and implicitly, that the events of the day in question and the alleged actions/inactions of Patterson and/or Josephat were the result of Wal-

6

Mart's direct negligence in failing to properly train, to assure proper staffing, and/or to ensure the entry vestibule was non-negligently designed (Tr., Vol. I., 17:19-25 – 19:1-13).

Then, she reiterated "[b]ut this is really about those very, very important safety rules and making sure that Wal-Mart enforces those safety rules and makes changes in the design and how they train people so that this doesn't happen to other people" (Tr., Vol. I., 20:21-25); discussed Appellant's injuries, and opined "[t]hat's what happens when there's no safe way of her coming in and out of the store" (Tr., Vol. I., 21:20-22).

In sum, from the outset, Appellant's Counsel communicated to the jury the idea that Wal-Mart should be held *directly liable* for negligence in this case based on its alleged failure to have, follow, or enforce "safety rules" or, stated another way, its alleged breaches of duty based on failure to train, failure to ensure non-negligent design, et al (without any express or implicit reference to the concepts of vicarious or *res ipsa loquitur*). However, as discussed herein, she failed to prove any of those breaches and, therefore, failed to prove the claim she pled and presented.

In her Initial Brief, Appellant claims, several different times, that former Wal-Mart employees admitted to having acted negligently and, thereby, injuring Appellant. This claim is absolutely false. The record contains no "admission" of

7

negligence by Wal-Mart or any of its current or former employees. Appellant's assertion that the testimony of Mr. Patterson and Mr. Josephat, *which was given at deposition and read to the jury at trial*, collectively "consists of admissions" of negligence is absolutely inaccurate; and is not consistent with anything Appellant pled or presented to the jury at trial.

Mr. Eames testified that he recalled the incident (Tr. V. II, 51) and knew that Appellant fell because he was "right there" but did not know what caused her to fall (Tr. V. II, 52:11-12). Specifically, he stated "so I don't know exactly how it happened." *Id.*   He made no admission of negligence; and could not and did not attribute fault to his co-employee, Mr. Patterson, or anyone else.

Mr. Patterson testified at length about the training he received in relation to his job (Tr., V. II., 22-26 and 32-33).  With regard to the events surrounding the incident, He testified that he looked into the vestibule (unimpeded by the concrete half wall) before pushing the carts in and saw no one (Tr., V. II., 46:6-10), that looked down to direct the carts into place, that as he was directing the carts into place the row he was pushing caught on an adjacent row and that both moved forward, that he looked up and saw Ms. Thews "go down," and thought "dang she got hit" (Tr., Vol. I., 40-41 and 46). He testified he did not know if Appellant had been in front of or behind the "red line" that customers are not supposed to cross

8

prior to her fall (Tr., Vol. I., 40-41 and 46); and that he did not see a cart make contact with Appellant; only that he saw her fall (Tr., Vol. I., 46:7-16).

In sum, Mr. Patterson testified to facts relating to the incident at issue. He never testified that he, Wal-Mart, or even Appellant acted negligently. In fact, contrary to what Appellant asserts, Mr. Patterson testified in a manner that indicated he acted reasonably; and, when asked by Appellant's Counsel if there was nothing he could have done to prevent the carts from moving forward (which is what she implied was the mechanism that caused the incident), he testified there was not (Tr., Vol. I., 41:14-16). This testimony is far from an admission of negligence. Interestingly, after asking the questions that drew these responses from Mr. Patterson, Appellant's Counsel did not challenge Patterson and did not seek to impeach him, to have him qualify his testimony. She allowed his testimony to stand (because, as discussed below, it fit with her theme that Wal-Mart, as opposed to any individual employee, was directly liable for the incident at issue in this case.

Moreover, Appellant's assertion that the testimony of Wal-Mart Assistant Manager Mary Ann Lara was "in direct contravention" of the testimony of Mr. Patterson and Mr. Josephat; and that Ms. Lara's testimony demonstrates that Patterson and Josephat had not been appropriately trained or failed to internalize the training provided is false and misleading. As a preliminary matter, Ms. Lara was called by Wal-Mart as a defense witness (the only defense witness) in its case .

9

Accordingly, her testimony was not considered by the district court as part of its decision to grant Wal-Mart's motion for judgment as a matter of law. In any case, as the district court noted collaterally when it rendered its ruling, even if Ms. Lara's testimony had been considered, the result would have been the same because it added "nothing to plaintiff's case whatsoever." (Tr., V. III, 11:20-22). This is because Ms. Lara directly rebutted Appellant's allegation that Wal-Mart failed to train Josephat and Lara. Secondarily, Appellant's assertion that. Lara's testimony established a "failure to internalize the training provided" is no more than an unsupported, conclusory allegation that does not prove any of the allegations of negligence asserted by Appellant in her Complaint (or establish a basis for any cognizable claim).

After the close of Appellant's case on liability, Wal-Mart made a timely Motion for Judgment as a Matter of Law, which the court took under advisement. Appellant subsequently made a similar motion. At that point, the district court heard argument on both motions, then reserved ruling until the following day to allow himself an opportunity to review the facts, the controlling law, and the arguments of the parties based on the same. The argument on the motions for judgment as a matter of law can be found in the Transcript (V. II, P. 190-210).

The following day, the district court ruled on the motions. The district court's ruling on the motions, additional argument in relation to the same, as well

10

as argument on Appellant's motion to amend or for continuance can be found in the Transcript (V. III; P. 4-20). Appellant reproduced select portions of both of those transcripts in her statement of the facts. However, Wal-Mart would respectfully requests that the Court review these (relatively short) sections of the transcript in their entirety, rather than relying on excerpts of the same selected by Appellant or Wal-Mart, in order to assure that all argument by the parties and commentary by the district court can be objectively reviewed and analyzed in context. Ultimately, the district court granted Wal-Mart's motion for judgment on the pleadings (D.E. 70-71); and judgment was entered in Wal-Mart's favor (D.E. 72). Thereafter, Appellant's counsel moved to amend her complaint or for continuance (D.E. 73), both of which the district court denied (D.E. 74).

## STANDARDS OF REVIEW

This Court reviews a grant of a motion for judgment as a matter of law *de novo* and considers the evidence in the light most favorable to the nonmoving party. *Circa Ltd. v. City of Miami,* 79 F.3d 1057, 1063 (11th Cir. 1996).

This Court reviews both a denial of a motion to amend a complaint and a denial of a motion for continuance under an abuse of discretion standard. *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.,* 341 F.3d 1292, 1300 (11th Cir.2003); and *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1296 (11th Cir. 2005).

11

## SUMMARY OF THE ARGUMENT

As a preliminary matter, the district court properly granted Wal-Mart's motion for judgment as a matter of law because, as it correctly discerned, the complaint in this case alleged a single claim, a direct negligence claim against Wal-Mart, which Appellant failed to prove at trial.    There is no merit to Appellant's assertion that the complaint alleged a theory of "general negligence" or her assertion that her allegations of specific breaches of duty by Wal-Mart merely asserted "alternate" theories of negligence against Wal-Mart.

There is also no merit to the claim that employees of Wal-Mart made "admissions" of negligence or that Wal-Mart made "numerous admissions of negligence" during the course of this case. In truth, neither Wal-Mart, nor its counsel, nor its former employees, made any such "admissions."   Therefore, there is no merit to any of Appellant's arguments based on these supposed "admissions." Further, there is no merit to the claim the district court erred in interpreting the case law cited in support of its decision.

Next, the district court correctly ruled that at expert testimony or similar testimony or evidence of some kind was required to establish the standard of care relevant to Appellant's negligent design claim. A claim for negligent/improper design cannot be assessed by jury absent such testimony because the standard of care for the design of an edifice such as a shopping cart vestibule requires "special

12

knowledge" which is outside the scope of common understanding. Thus, absent expert testimony or similar evidence or testimony, any decision by the jury on these claims would have been based on pure speculation. Accordingly, the district court properly disposed of Appellant's negligent/improper design claim as a matter of law. As an aside, Appellant's assertion of a "universal premise that individuals cannot see through concrete block" is a *red herring* given that the concrete block wall in question was a half wall, which employees testified they could see around by simply bending down.

Finally, the district court did not err in denying Appellant's 15(b) motions to amend the complaint or for continuance. Those motions were not motions to amend the complaint "to conform to the evidence at trial" or that otherwise fit within the language of the Rule. They were motions based on evidence that Appellant was aware of months before trial, filed in at the "eleventh hour" in effort to avoid an adverse ruling on a motion for judgment as a matter of law despite the absence of any legitimate reason for such a delay. For a number of valid reasons, these motions were properly denied based on Appellant's unwarranted delay in filing them and the prejudicial effect that granting them solely to allow Appellant a "second bite at the apple" after she failed to prevail on the theory she pled and presented at trial.

13

## ARGUMENT

From the time she initiated her lawsuit until the time she rested her case Appellant chose to *plead* and *present* her case against Wal-Mart *solely* and *exclusively* based on the idea that Wal-Mart had directly breached a legal duty owed to her in a number of specific ways; and that, as a result of these direct breaches of duty, Wal-Mart should be held directly liable for negligence in relation to the incident/accident that is the subject of this case.

Appellant's decision to plead and present (i.e. try) her case based on this theory of direct liability against Wal-Mart was a calculated strategic choice. Unfortunately for Appellant, while she was able to plead and present her direct liability claim against Wal-Mart, she was unable to produce any evidence to prove that claim. Therefore, Wal-Mart moved for a judgment as a matter of law arguing that Appellant failed to prove the claim it pled and presented to the jury.

At that point, recognizing the validity of Wal-Mart's motion, Appellant made an "eleventh hour" effort to assert previously unpled and unpresented claims as argument in a frantic effort to avoid a judgment as a matter of law. However, the trial court recognized those new claims as improper and untimely; recognized that Appellant had failed to prove the direct liability based claim she had pled and presented; and, therefore, correctly granted a judgment as a matter of law in Wal-Mart's favor.

14

In her Initial Brief, Appellant makes numerous arguments in a similarly frantic effort to avoid the judgment entered by the district court; and escape the consequences of her failed strategy. Essentially, Appellant argues that the allegations of her Complaint assert a "general negligence" claim that warranted allowing her to present unpled and unpresented claims based on vicarious liability and/or *res ipsa loquitur* to the jury or, alternatively, to amend her complaint to insert such claims in place of her failed direct liability claim and proceed as if the trial at issue here never happened.

In sum, Appellant seeks a "do-over" or a "second bite at the apple" because the strategy she pursued and the tactics she employed from the time she filed her Complaint until the time she rested her case were unsuccessful. This should not be allowed. Nothing set forth in Appellant's Initial Brief warrants allowing her to avoid the judgment of the district court and begin her case anew, based on a revised strategy, simply because her the strategy and tactics she chose to employ in trying this case the first time did not garner the result she had hoped for. Therefore, her arguments should be rejected by this Court; and her appeal denied.

## I. THE DISTRICT COURT CORRECTLY GRANTED WAL-MART'S MOTION FOR JUDGMENT AS A MATTER OF LAW

The trial court properly granted Wal-Mart's motion for judgment as a matter of law because, despite ample opportunity to do so at trial, Appellant "utterly failed to present any evidence, expert or otherwise" to prove the sole claim she plead

15

against Wal-Mart in her complaint and presented against it at trial: a claim premised *exclusively* on the theory that Wal-Mart should be held *directly* liable for negligence based on several asserted breaches of duty by Wal-Mart itself (as opposed to its employees). The correctness of the trial court's ruling Wal-Mart's motion for judgment as a matter of law is not impacted in any way by the arguments raised in Appellant's Initial Brief.

## A. *THE APPELLATE CANNOT ESCAPE THE FACT THAT THE COMPLAINT AT ISSUE IS PREMISED EXCLUSIVELY ON A THEORY OF DIRECT LIABILITY*

### 1. There is no merit to Appellant's argument that the allegations in her Complaint assert a claim based on "general negligence" or that the specific allegations that Wal-Mart breached a duty to her are mere "alternate theories" of recovery

The record in this case establishes that Appellant pled, presented, and tried this case solely and exclusively as a case in which Wal-Mart should be held directly liable for negligence; but failed to prove the claim it pled; and, as a result, lost the case on a properly granted motion for judgment as a matter of law. However, in her Initial Brief, seeks to re-write the history of this case by arguing that she pled a viable claim for "general negligence" against Wal-Mart in her complaint; that the specific allegations that Wal-Mart directly breached a duty owed to Appellant were alleged *in the alternative*; and that the trial court erred in determining otherwise based on an incomplete and improperly focused analysis of the complaint. There is absolutely no merit to these arguments, which are based on

16

blatant mischaracterizations of the complaint and the allegations contained therein; and are clearly meant to build a facade that appears to establish a predicate for her argument on appeal.

As a preliminary matter, even a cursory review of the complaint makes it clear that the sole claim Appellant pled against Wal-Mart therein was a claim premised *exclusively* on the theory that Wal-Mart should be held *directly* liable for negligence in relation to the accident/incident at issue in this case. In paragraph eighteen (18) of the complaint, Appellant alleged that Wal-Mart owed a duty to her; and, in paragraph twenty (20), she alleged a number of very specific ways in which she claimed Wal-Mart *directly* breached that duty. These allegations state a negligence claim against Wal-Mart based exclusively on a theory of direct liability; and nothing more.

If Appellant had intended to seek recovery based on a theory of "general negligence" she would have had to add an allegation to the complaint to the effect that, in addition to the specific breaches alleged, Wal-Mart breached its duty to her via a general want of ordinary care.  However, she did **not** include such an allegation anywhere in her complaint. Thus, there is no support for Appellant's claim that the allegations of her complaint should be read as "primarily" or even alternatively as allegations of a claim of "general negligence."

17

In obvious effort to get around the fact that the complaint contains no allegations of breach other than those enumerated in paragraph twenty (20), and lay a predicate for its later argument that it should have been allowed to amend its complaint at the eleventh hour to allege a claim based on vicarious liability, Appellant suggests to this Court that it should read paragraph ten (10) of the complaint as an allegation of a breach of the duty alleged in paragraph twenty (20). This is a wishful and wholly inaccurate characterization of paragraph ten (10).

The only thing Appellant alleges in paragraph ten (10) was that Appellant was "struck by a shopping cart propelled forward by a Wal-Mart employee pushing the shopping cart from the opposite side of the shopping cart vestibule." This allegation does not indicate, expressly or implicitly, that the referenced employee breached a duty to Appellant (i.e. that the employee acted negligently) or that Appellant was seeking to hold Wal-Mart vicariously liable for the actions of that employee. Thus, as the trial court correctly pointed out, the allegation in paragraph ten (10) is no more than an "allegation of fact" (T. at xx; I.B. at 8).

If Appellant had intended to seek recovery based on a theory of vicarious liability or other similar theory, she would have had to allege in that paragraph or some other paragraph of the complaint that the Wal-Mart employee referenced therein was acting negligently at the time of the alleged incident/accident (i.e. was breaching some defined legal duty owed to Appellant); and that, as a result, she

18

was seeking to hold Wal-Mart vicariously liable for the employees actions under a theory of respondeat superior. However, again, she **did _not_** do so.

Thus, considering all the allegations of Appellant's Complaint, including those in paragraphs ten (10) and eighteen, contrary to the her assertion in her Initial Brief, **Appellant did _not_ allege or assert a general negligence claim against Wal-Mart in the complaint**; nor did she present such a claim before or at any point during trial (until argument on the motions for judgment as a matter of law). Rather, as stated previously, she asserted a negligence claim against Wal-Mart based exclusively on a theory of direct liability.

Based on the foregoing and the discussion in the next section of this brief, it is clear, as stated in the opening paragraph of this section, that Appellant pled the complaint as she did based on a clear strategic decision by Appellant's Counsel. It is a decision that Appellant must now live with; and cannot undo at this late date by mischaracterizing the complaint in an effort to obtain another chance at trial simply because the strategy she chose to employ at trial did not yield the result she had hoped for.

**2. There is no merit to the Appellant's argument that the trial court improperly focused on less than the entire complaint in rendering its decision**

Appellant seeks to characterize the district court's analysis of the complaint as an analysis that improperly focused solely on a single paragraph of the

19

complaint (paragraph 20). This Court need only review of Volume III of the trial transcript and the complaint itself, to see that the district court performed a thorough analysis of **all** the allegations of the Complaint in much the same way Wal-Mart did in the preceding section, before correctly concluding that Appellant pled a single, specific negligence claim against Wal-Mart based exclusively on a theory of direct liability, but failed to prove that claim at trial.

3. **There is no merit to Appellant's argument that the allegations in her Complaint were only framed as they were because she did not have the knowledge to allege anything additional or different until some point "subsequent to the discovery process"**

In her Initial Brief, Appellant also argues, that the allegations in her complaint were only framed as they were because she did not have or obtain the knowledge necessary to allege the claims she sought to add via her untimely motion to amend until "subsequent to the discovery process" when she purportedly learned that a former employee of Wal-Mart "admitted negligence in operating the cart pushing machine." A review of the undisputed record evidence establishes that this argument and the supposed factual assertions on which it is based are, quite simply, false.

    *a. Any information Appellant learned about the incident at issue was learned during the discovery process; not "subsequent to [it]"*

20

First, the undisputed record evidence establishes that Appellant was provided with the identities of the only two witnesses with knowledge of the operation of the "cart pushing machine" at the time of the incident during the discovery process (not "subsequent to the [it]" as she claims in her Initial Brief). These two witnesses were former Wal-Mart employees Wesley Patterson (who was operating the cart pushing machine at the time of the incident) and Eames Josephat (who was working with Mr. Patterson at that time).

Wal-Mart advised Appellant that Wesley Patterson was an individual likely to have discoverable information in its Rule 26 disclosures on November 18, 2011. In that disclosure, November 18, 2011, Wal-Mart identified Patterson as a former employee who was working as a "cart pusher" at the subject store on the day of the incident and provided Appellant with his current address. For reasons that are not clear, Appellant's counsel did not take Mr. Patterson's deposition until October 11, 2012. This was almost one year after Wal-Mart provided Appellant with Patterson's name and contact information, but prior to the original discovery cutoff date and more than five months before the March 18, 2013 trial.

When Mr. Patterson's deposition was taken, Wal-Mart and Appellant learned of the existence of an additional individual who might have discoverable information. Specifically, during his deposition, Mr. Patterson testified he had been

21

working with an individual named "Jimenez" on the day of the incident at issue in this case.

After a diligent investigation following Patterson's deposition, Wal-Mart determined the individual Mr. Patterson was referring to as "Jimenez" was actually a former employee named Eames Josephat. After making that determination, Wal-Mart promptly disclosed Mr. Josephat's identity to Appellant's Counsel, who took Mr. Josephat's deposition on November 15, 2012. This was prior to the extended discovery cut-off date and more than four months before the March 18, 2013 trial.

Thus, as a preliminary matter, to the extent the testimony of either of these gentlemen even arguably gave Appellant knowledge or notice of any relevant fact, **she cannot assert in good faith that she became aware of the same until "subsequent to the discovery process"** because such an assertion is simply not supported by the evidence. Furthermore, on an important related point, to the extent any information Appellant gleaned from the depositions of these individuals gave rise to additional claims or theories of recovery in her mind; the information was obtained far enough in advance of trial to allow Appellant to move to her amend her complaint to plead claims or theories of recovery **if she had wanted to do so**. However, as explained elsewhere herein, Appellant chose to avoid moving to amend her complaint for **tactical reasons** (i.e. so that she could continue to

22

advance and focus the jury solely on her claim of direct negligence against Wal-Mart).

### b. *No former employee or employees of Wal-Mart ever "admitted negligence" in any way, shape or form*

A review of the deposition transcripts of Patterson and Josephat (directly or via a review of the trial transcripts) evidences the fact that **neither** man "admitted negligence in operating the cart pushing machine" as Appellant claims in her argument. Such a review reveals that both men merely testified to the facts surrounding the incident - to the extent they were able – and that neither man "admitted negligence" or gave any testimony regarding attributing negligence to Wal-Mart or anyone else. In fact, to the absolute contrary, Wesley Patterson, the individual who was placing carts in the queue within the vestibule area at the time the incident occurred testified that there was nothing he could have done differently to have avoided this incident.

Therefore, the record evidence does not even come close to supporting Appellant's assertion that Patterson or Josephat "admitted negligence" or her assertion that an admission by one of these gentlemen made her aware she may be able to assert additional claims against Wal-Mart. To the contrary, the undisputed and indisputable record evidence **refutes** any such contention or contentions. Thus, Appellant cannot assert in good faith that the testimony of either of these

gentlemen even arguably "admitted negligence in operating the cart pushing machine" because such an assertion is simply not supported by the evidence.

### c. Section Conclusion

In conclusion, the argument Appellant makes is without merit and the conclusions she seeks to have the Court draw from it are completely unsupported by the evidence in the record. Rather than advance Appellant's argument on this point, the record evidence completely refutes it and supports Wal-Mart's position that Appellant had both knowledge of the facts and the opportunity to timely amend her Complaint long before trial but, for **strategic** and **tactical** reasons, chose not to do so.

This is abundantly clear given that, despite her knowledge of the deposition testimony of Patterson and Josephat, and all of the other relevant facts in her possession, Appellant: (1) never sought leave to amend the complaint prior to trial; (2) affirmatively advised the district court in the Joint Pre-Trial Statement that the only issues left for trial were issues related to her allegations of direct negligence against Wal-Mart (i.e. the purported breaches of duty alleged in paragraph 20 of the Complaint); and (3) presented the argument that Wal-Mart was directly liable for the incident at issue in her opening and throughout her case; and (4) never suggested in any way that she sought to assert or raise claims based on general negligence, vicarious liability and/or *res ipsa loquitur* until **after** both parties and

24

rested their cases and the parties were presenting argument regarding Wal-Mart's motion for judgment as a matter of law.

### 4. Appellant's argument that the allegations of her complaint were rendered "superfluous" by "numerous admissions" of negligence or an admission of liability by Wal-Mart is legally and factually meritless

#### a. None of Wal-Mart current or former employees ever made an "admission" of negligence in this case

As explained in the foregoing paragraph, former Wal-Mart employees Patterson and Josephat testified to facts only. Neither admitted to having been negligent, neither asserted that the other had been negligent, and neither asserted, in any way, that Wal-Mart had been negligent. On an important note, no other witness associated with Wal-Mart made any such admission either. Thus, there is no basis for Appellant's assertion, in her Initial Brief, that Wal-Mart made a single admission of liability much less "numerous" admissions of liability.

#### b. Wal-Mart did <u>not</u>, at any point, "admit liability" in this case

Towards the end of her Initial Brief, Appellant goes so far as to assert that Wal-Mart's Counsel conceded liability in his opening statement. This claim, like Appellant's claims regarding the supposed "admissions" by Wal-Mart, individually or thought its current or former employees, is absolutely baseless. At no point in this case did Wal-Mart or its Counsel, in any way, admit to liability in this case. Wal-Mart denied liability in every pleading or writing it filed in this case. What Wal-Mart's Counsel do in his opening statement was suggest that the evidence

25

would show that the accident at issue in this case was a freak accident; and would refute Appellant's claims that Wal-Mart had been directly negligent by showing that Wal-Mart had acted reasonably and had not breached the duty it owed Appellant in any of the ways suggested by her counsel. This was anything but an admission of liability.

### c. Section Conclusion

Based on the foregoing, there is no basis for Appellant's assertion that the allegations of her Complaint were rendered "superfluous" by Wal-Mart's "numerous admissions" of negligence. In truth, there was not a single admission of negligence by Wal-Mart or anyone testifying or acting on its behalf.

### 5. The only burden the trial court (properly) imposed on Appellant was the burden to prove the case she plead against Wal-Mart as required by the controlling law

Appellant's argument that she did not have a burden to show "how" Wal-Mart was negligent via the allegations of her Complaint is also meritless. Via the use of apparent "added burden" argument, Appellant seeks to draw the Court's attention away from a simple fact. To wit, that Appellant had a duty to plead and prove her case as pled (both alleged duty and alleged breach or breaches) by a preponderance of the evidence.

In her Initial Brief, Appellant cites to a number of cases regarding motions to dismiss and failure to state a claim under F.R.C.P. 12(b)(6) in an apparent effort

to support her argument that the trial court imposed an improper burden on her. However, the cited cases have no applicability here. Appellant may have met her pleading burden (i.e. pled her complaint sufficiently to avoid a dismissal for failure to state a claim) by including the allegations already discussed herein in her Complaint. However, pleading a Complaint sufficiently to avoid dismissal for failure to state a cause of action and proving the allegations of that Complaint by competent evidence to avoid a directed verdict are entirely different things; and involve entirely different burdens.

Appellant did not lose this case because she failed to allege facts sufficient to state a *prima facie* claim at the time she filed her Complaint. Appellant lost this case at the directed verdict stage because she failed to carry her burden at trial by proving the case that she herself pled and outlined/framed via the allegations of her Complaint. Stated another way, Appellant lost this case on directed verdict because she failed to offer any competent evidence to support the sole claim she pled in her Complaint (i.e. failed to prove that Wal-Mart breached its duty to Appellant in any of the ways she alleged it had in her Complaint).

As discussed previously herein, Appellant's argument that she alleged generally that Wal-Mart was directly negligent has no basis in fact. Appellant alleged Wal-Mart's duty in somewhat general terms. However, critically, she did not allege that Wal-Mart breached that duty generally (and did not allege liability

27

based on general negligence, vicarious liability or *res ipsa loquitur*). Rather, she alleged, unequivocally, and exclusively that Wal-Mart *directly* breached that alleged duty in a number of very specific ways; and cannot escape the fact that she had the burden to prove at least one of them by competent evidence if she wished to avoid the entry of a Judgment as a Matter of Law in Wal-Mart's favor *or* the fact that she failed to do so.

## B. THE DISTRICT COURT CORRECTLY RULED THAT APPELLANT WAS REQUIRED TO PRESENT EXPERT TESTIMONY OR SOME EVIDENCE TO ESTABLISH THE APPLICABLE STANDARD OF CARE BEFORE ITS DEFECTIVE DESIGN AND INADEQUATE MAINTENANCE CLAIMS COULD PROPERLY BE SUBMITTED TO THE JURY

Many of the alleged breaches of duty that Appellant alleged (in her Complaint and Joint Pre-Trial Statement) that Wal-Mart committed were part of an overall argument that Wal-Mart should be held directly liable for the "negligent design" (e.g. general claim of improper design and specific claims of failure to install a threshold and failure to provide a clear line of sight) and/or "improper maintenance" of the area where the incident at issue in this case took place.

Wal-Mart was entitled to and was properly granted a judgment as a matter of law on these claims by the trial judge because Appellant failed to put forth **any** evidence of the standard of care regarding the design or maintenance of the shopping cart vestibule areas in similarly situated establishments. Appellant's

"negligent design" and "negligent maintenance" claim, in which Appellant casts Wal-Mart as the designer of the vestibule area or, at a minimum, an entity that should be held to stand in the shoes of the designer, make it clear that the claims cannot be decided using the standard of reasonable care applicable to an "ordinary person."

These claims arguably require that Wal-Mart be treated as and held to the same standard as a design "professional" under Florida law. However, even if the Court avoids the question of whether Wal-Mart is entitled to a professional standard of care, it is clear that Appellant's claims implicate a somewhat heightened standard of care. Stated another way, it is clear that, *at a minimum*, Appellant was required to put forth **some evidence of the standard of care** applicable to the design and maintenance of shopping cart area vestibules by similarly situated retailers in order to meet her burden. *See Insurance Co. of the West v. Island Dream Homes, Inc.*, 679 F.3d 1295 (11th Cir. 2012)(cited by the district court in this case).

### *Insurance Co. of the West v. Island Dream Homes*

This is because, as noted in this Court's decision in *Insurance Co. of the West v. Island Dream Homes, supra,* expert testimony is required in cases involving "specialized knowledge" *See Insurance Co. of the West v. Island Dream Homes, supra,* citing *inter alia Goolsby v. Gain Technologies, Inc.,* 362

Fed. Appx. 123, 128, 132 (11th Cir. 2010). In *Goolsby*, a plaintiff sued defendants (manufacturers of plastic products) alleging *inter alia* negligent design of a product he contracted with them to make. Ultimately, the defendants in that case moved for summary judgment asserting that plaintiff had failed to support his negligent manufacturing claim (i.e. that the manufacturers' use of a certain type of steel did not meet a reasonable standard of care). The district court granted summary judgment and the plaintiff appealed. On appeal, this Court held that the district court properly granted summary judgment to the manufacturers because the plaintiff was required - and failed - to offer any expert testimony to support his claim that the manufacturers' use of a certain type of steel did not meet a reasonable standard of care; and, in explaining its decision to uphold the judgment in that case, noted "that **the jury should not be "permitted to speculate as to the standard against which to measure the acts of the professional in determining whether he exercised a reasonable degree of care.**" *Id.* at 135.

Wal-Mart respectfully asserts that this case is similar in nature to *Insurance Co. of the West v. Island Dream Homes, supra,* citing *inter alia Goolsby v. Gain Technologies, Inc.,* 362 Fed. Appx. 123, 128, 132 (11th Cir. 2010). Wal-Mart acknowledges that there are cases in which an expert may not be necessary but, in the words of this Court, "[t]here may be instances when an expert is not necessary

30

to establish the standard of care, but this is not such a case." *Id.* at xx.

In this case, Appellant made claims that Wal-Mart should be held negligent for the design of the shopping cart vestibule in question. The knowledge required to properly design a shopping cart vestibule in a retail establishment not a type of knowledge within the "common knowledge." The knowledge required to properly design a shopping cart vestibule in a retail establishment inarguably requires "specialized knowledge" as discussed by this Court in *Insurance Co. of the West v. Island Dream Homes, supra.*

### *Cooper Hotel Services, Inc. v MacFarland*

The same conclusion is warranted by the decision of Florida's Second District Court of Appeal in *Cooper Hotel Services, Inc. v. MacFarland*, 662 So. 2d 710 (2d DCA 1995). In that case, MacFarland ("plaintiff") filed a negligence action against Cooper Hotel Services (the "hotel") after she slipped and fell in a bathtub while a guest at the hotel. The hotel moved for a directed verdict at the end of trial but the same was denied and a judgment was entered against it.

The hotel appealed and argued the plaintiff failed to introduce evidence establishing the hotel breached any duty it owed to the plaintiff. On appeal, the appellate court held, even after construing all inferences of fact against Cooper, that the record to be "devoid of evidence-expert or otherwise-to establish that Cooper Hotel breached its duty of care to [the plaintiff]." *Cooper*, at 713. The

31

appellate court found the plaintiff did not show the hotel failed to secure proper tubs for its guest rooms, failed to show the tubs used were not as good as textured tubs, and failed to show the hotel failed to maintain the tub in question, or that the tub in question was otherwise unreasonably dangerous. *Id.* Additionally, the District Court of Appeal noted that **the mere fact that an accident happened is not enough to maintain a cause of action for negligence** and when the facts of the case are undisputed, the question of negligence becomes one of law for the trial court. *Id.* at 712 (emphasis added). Ultimately, the appellate court, Florida's Second District Court of Appeal, held the plaintiff failed to establish and prove a cause of action for negligence and that the lower court should have directed a verdict in favor of the hotel.

As in *Cooper*, in the present case Appellant failed to establish that Wal-Mart failed to maintain its property in a reasonably safe condition. Appellant did not elicited any testimony that it failed to properly train its employees on how to handle shopping carts in the entry/vestibule area of the store. Appellant did not provide any type of testimony, expert or otherwise, establishing Wal-Mart improperly designed or maintained the shopping cart area of the store.

Finally, Appellant did not establish Defendant failed to warn Plaintiff of any perils it knew or should have known of (i.e. there was no history or prior similar incidents or other evidence that would even arguably have given rise to a duty to

warn of a known peril). As the Court in *Cooper* noted, the simple fact an accident occurred is not enough to maintain a cause of action for negligence. Thus, in this case, due to the lack of evidence establishing any kind of breach, Wal-Mart was entitled to a judgment as a matter of law, which the district court appropriately granted.

### Section Conclusion

Therefore, expert or some similar testimony was required in this case to establish the standard of care for the design applicable to the design of shopping cart area vestibules in the retail industry. However, Appellant failed to offer any such testimony and, as a result, failed to meet her burden. Thus, the record was "devoid of evidence-expert or otherwise-to establish" that Wal-Mart breached its duty of care to [the plaintiff]." Therefore, the trial court properly granted Wal-Mart's motion for judgment as a matter of law on Appellant's negligent design and maintenance claims. This was the correct decision and should be affirmed because, as the district court in this case noted, any decision the jury in this case might have rendered on Appellant's negligent design claims absent some evidence regarding the standard of care would have been based on pure speculation.

## C. THE TRIAL COURT'S DECISION TO GRANT WAL-MART'S MOTION FOR JUDGMENT AS A MATTER OF LAW WAS UNAFFECTED BY APPELLANT'S ELEVENTH HOUR EFFORT TO INJECT THE ISSUE OF RES IPSA LOQUITUR AND VICARIOUS LIABILITY INTO THIS CASE

1. **The district court properly ruled that Appellant could not avoid the entry of judgment as a matter of law in Wal-Mart's favor via her "eleventh hour" attempt to inject the issue of *res ipsa loquitur* into this case**

Appellant's eleventh hour attempt to inject the issue of *res ipsa loquitur* into this case was improper as a matter of law. The Florida Supreme Court has recognized *res ipsa loquitur* as a doctrine of very limited applicability; and has stated that, given the restrictive nature of the doctrine, a court should never lightly provide this inference of negligence. *See City of New Smyrna Beach Utilities Comm'n v. McWhorter,* 418 So.2d 261, 262 (Fla.1982). This is particularly true in cases such as this one where Appellant: (a) failed to plead or present a claim based on *res ipsa loquitur* or even mention the term until after she and Wal-Mart had rested their respective cases; (b) pled and presented her claim based exclusively on allegations of specific acts of negligence by Wal-Mart that directly caused that accident; thereby moving this case squarely outside the realm of circumstances where *res ipsa loquitur* could reasonably be applied. The district court recognized these factors and correctly rejecting Appellant's argument based on *res ipsa loquitur* as an improper and illegitimate basis for denying Wal-Mart's motion for judgment as a matter of law in this case.

a. **Appellant did not plead, present, or otherwise appropriately raise the issue of *res ipsa loquitur***

Before a plaintiff can rely on the doctrine of *res ipsa loquitur*, she must first **plead** the elements of doctrine in her complaint. *See e.g. City of New Smyrna*

34

*Beach Utilities Commission v. McWhorter,* 418 So.2d 261, 262 (Fla.1982)(finding trial court did not err in denying request for jury instruction based on *res ipsa loquitur* where the plaintiffs "failed to allege, much less prove" any of the elements of *res ipsa loquitur*).

Moreover, she must **present** her case in a manner that makes it clear she is seeking to rely on the doctrine; and is entitled to do so. As the Florida Supreme Court has held that **"it is incumbent upon the plaintiff to present his or her case in a manner which demonstrates and satisfies each of the doctrine's requisite elements** and only after the plaintiff carries this burden of proof may a court supply the inference" *Id.* (discussing *Goodyear Tire & Rubber Co. v. Hughes Supply, Inc.,* 358 So.2d 1339 (Fla.1978))(emphasis added).

These requirements are grounded on the general principle that, as a matter of fairness, a party such as Wal-Mart, should not be required to litigate other issues or contentions, such as the issue of *res ipsa loquitur*, advanced for the first time at trial; particularly where, as here, Appellant advanced those issues, for the first time, after she and Wal-Mart had rested their respective cases, in an desperate effort to avoid an inevitable adverse judgment as a matter of law.

In this case, Appellant did not plead the elements of *res ipsa loquitur* in her complaint, did not indicate in the Joint Pre-Trial Statement the potential applicability of *res ipsa loquitur* was an issue remaining to be litigated, did not

propose/request a jury instruction based on *res ipsa loquitur* in the jury instructions jointly prepared by the parties, did not reference (directly or implicitly) in her opening argument, and did not otherwise present her case in a manner that suggested she was to seek recovery based on the doctrine of *res ipsa loquitur*. In fact, the first time Appellant's Counsel ever mentioned *res ipsa loquitur* was during her argument on the parties' motions for judgment as a matter of law; after Wal-Mart had rested its case (T. 191; 196).

In her Initial Brief, Appellant "challenges the dismissal of her res ipsa loquiter (sic) argument." However, she fails to explain why she failed to plead the elements of *res ipsa loquitur* or present her case in a manner that indicated she intended to rely on the doctrine. Instead, in an effort to avoid dealing with these failures, she jumps immediately into a general discussion of *res ipsa loquitur* and its elements; and argues (*without any acknowledgement of or regard for the very specific claim she pled and presented at trial*) that the evidence in this case should be deemed sufficient to establish the elements of the doctrine. Under the circumstances, this argument should be unequivocally rejected.

**b. Based on what Appellant did plead and present, this was not a *Res Ipsa Loquitur* case**

Moreover, Appellant's entire case, from beginning to end, was pled and presented as a case based solely and exclusively on the claim that Wal-Mart should be held directly liable for specific acts of corporate negligence (i.e. specific

36

breaches of duty by Wal-Mart). There was no allegation of general negligence or breach of duty in Appellant's Complaint or presentation that could even arguably support an argument that Appellant pled and presented her case in a manner that would reasonably allow her to avail herself of the doctrine of *res ipsa loquitur*.

In fact, via her pleading and presentation of numerous specific acts of alleged negligence as the sole and exclusive cause of the incident/accident at issue, Appellant positioned her case in a manner that placed it squarely outside the realm of circumstances where the doctrine of *res ipsa loquitur* could reasonably be relied on or applied. As a result, any need for or option to rely on the doctrine of *res ipsa loquitur* was erased from the case. *See* Sawaya, 6 *Fla. Prac., Personal Injury & Wrongful Death Actions* § 24:10 (2012-2013 ed.)(acknowledging there is no case law directly on point on this issue in Florida but suggesting, based on the case law that exists on similar issues, that "the pleadings in each should be examined in light of the 'vanishing inference' test adopted in [*Marrero v. Goldsmith*, 486 So. 2d 530 (Fla. 1986)] to determine whether the plaintiff has crossed the threshold and pled too many specific acts of negligence to prevent application of the doctrine [of res ipsa loquitur]."

### c. Conclusion re res ipsa loquitur

Allowing Appellant to inject the *res ipsa loquitur* into the case at the "directed verdict" stage, after she failed to plead it; present it, or timely request a

jury instruction; and chose instead, for strategic and tactical reasons, to solely and exclusively plead and present a direct negligence claim (based on numerous, specific, direct acts), would have been fundamentally unfair and prejudicial. This would have allowed Appellant to switch her strategy and tactics at the last possible moment (in the face of certain defeat) to assert a new claim against Wal-Mart (after the company had already rested its case); and have the jury instructed on a claim that was never pled or presented to it (where, in fact, the jury had just been presented with completely opposite claim).

To borrow language from the Florida Supreme Court, in a slightly different but related context, to allow *res ipsa loquitur* to be used in this case would have been to allow the doctrine to be used improperly as "a finishing stroke, administered by the charging judge, in a plaintiff's case which was built step by step until the last…" on claims that defendant was directly negligent and plaintiff was not. *See Goodyear Tire & Rubber Co. v. Hughes Supply, Inc.*, 358 So.2d 1339 (Fla. 1978)(internal citation omitted). This would, undoubtedly, have been improper. Therefore, the district court did not err when it rejected Appellant's attempt to raise the issue of *res ipsa loquitur* in an effort to defeat Wal-Mart's Motion for Judgment as a matter of Law; and rejected any idea that Appellant was entitled to have the jury instructed regarding the doctrine of *res ipsa loquitur*.

## 2. Appellant did not plead, present, or otherwise appropriately raise a the issue of vicarious liability

For essentially the same reasons discussed in the foregoing discussion of Appellant's late attempt to raise the issue of *res ipsa loquitur*, Appellant's "eleventh hour" attempt to inject the issue of vicarious liability into this case was improper as a matter of law.   Under Florida law, a claim based on vicarious liability is considered by the courts to be a separate cause of action that **must be specifically pled in the complaint**[1]. *See Goldschmidt v. Holman*, 571 So. 2d 422 (Fla. 1990); *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126 (Fla. 1985); *Designers Tile Intern. Corp. v. Capitol C Corp.*, 499 So. 2d 4 (Fla. 3d DCA 1986).

In this case, Appellant did not plead the elements of vicarious liability in her complaint, did not indicate in the Joint Pre-Trial Statement that vicarious liability was an issue remaining to be litigated, did not propose/request a jury instruction based on vicarious liability in the jury instructions jointly prepared by the parties, and did not present her case in a manner that suggested she was to seeking to recover based on a theory of vicarious liability. In fact, at no point during the entire trial did Appellant's Counsel even mention the term "vicarious liability" or the term "respondeat superior."

---

[1] There is an exception to the general rule that allows an initially unpled vicariously liability claim to be tried where a party timely and appropriately moves for and is granted leave to amend her complaint to conform to the evidence at trial. However, as explained in the following section of this Brief, that exception does not apply here.

Moreover, the first time Appellant's counsel expressly or implicitly suggested a Wal-Mart employee (Wesley Patterson) had acted negligently and that Wal-Mart should be held liable on that basis was during argument on the parties' motions for judgment as a matter of law. Even then, Appellant's only alluded to the idea of having the jury consider a vicarious liability claim, without ever calling it by name.

Ultimately, it was the trial judge who, in response to Appellant's implied argument, first used the term "respondeat superior" in explaining that he would not let the jury consider such a claim because it had not been pled, had not been identified as an issue prior to trial, and had never been part of Appellant's case (T. xx). Based on the foregoing, it is clear the district court correctly rejected Appellant's attempt to defeat Wal-Mart's motion for judgment as a matter of law by raising the unpled and unpresented issue of various liability.

## II.    THE DISTRICT COURT CORRECTLY DENIED APPELLANT'S UNDULY UNTIMELY F.R.C.P 15(b) MOTIONS TO AMEND THE COMPLAINT AND MOTION FOR CONTINUANCE

From the time she initiated her lawsuit until the time she rested her case Appellant chose to *plead* **and** *present* her case against Wal-Mart *solely* **and** *exclusively* as a case based on the idea that Wal-Mart should be held directly liable for negligence based on one or more of six specific alleged breaches of duty by the Company itself; as opposed to a case based on the idea that Wal-Mart should be

40

held vicariously liable for negligence based on the actions of its employees. Appellant's decision to proceed in this manner was a calculated **strategic choice.**

Appellant advanced her strategy by via a series of supporting **tactical choices** that included: (a) choosing to allege her complaint to assert a direct liability claim only; (b) choosing to refrain from timely moving to amend her complaint to allege an alternative theory or theories of recovery; and (3) choosing to refrain from taking any position in her pleading or presentation that would conflict with her direct liability claim against Wal-Mart (until an adverse judgment as a matter of law was imminent).

The reason for Appellant's strategic and tactical choices is obvious: Appellant believed that a case based on the idea that Wal-Mart directly engaged in actions or inactions that breached a legal duty or violated "safety rules" was likely to **garner a more significant verdict** than a claim based on the idea that Wal-Mart did nothing directly wrong but should nonetheless be held vicariously liable for the actions of an employee.

Ultimately, Appellant's strategy was unsuccessful. Unfortunately for Appellant, she failed to present any evidence or testimony to establish the standard of care applicable to her claims against Wal-Mart and failed to present any evidence or testimony to establish that Wal-Mart breached a legal duty to her in any of the specific ways she alleged and asserted it had.  In other words, despite

41

what she pled and presented, Appellant was unable to prove that Wal-Mart was directly liable for the incident at issue in this (i.e. she was unable to prove her theory of the case). As a result, Wal-Mart moved for judgment as a matter of law at the close of Appellant's case and again after it rested its case.

It was only then, after Appellant and Wal-Mart had rested their cases, during argument on Wal-Mart's motion for judgment as a matter of law, in a frantic effort to avoid the entry of a judgment in Wal-Mart's favor, that Appellant abandoned her strategy, switched her tactics, and began asserting that she should be allowed to inject claims she had not previously pled or presented into the case (i.e. claims based on the concept of vicarious liability and the doctrine of *res ipsa loquitur*).

The district court saw through Appellant's efforts, recognized her undue delay in asserting previously unpled and unpresented issues (first via argument and, after the court granted Wal-Mart's motion, via a motion to amend and a motion to continue) was the result of a strategic and tactical decision as opposed to any legitimate reason; and was based on facts that had been in Appellant's possession for months before trial (at a minimum). Accordingly, the district court rejected Appellant's untimely arguments; denied Appellant's motion to amend and motion to continue; and properly granted Wal-Mart's Motion for Judgment as a Matter of Law.

42

**A.    THE TRIAL COURT ACTED WITHIN ITS DISCRETION IN DENYING APPELLANT'S MOTION TO AMEND HER COMPLAINT UNDER RULE 15(b)(1)**

Based on the facts of this case, Appellant was not entitled to amend her Complaint pursuant to the terms of F.R.C.P. 15(b)(1). Therefore, the district court did not err in denying Appellant's motion to amend her complaint based on that Rule. F.R.C.P. 15(b)(1), which governs amendments during and after trial "Based on an Objection at Trial," states:

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

The decision to grant or deny a motion to amend a complaint is left to the sound discretion of the district court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Carter v. Supermarkets Gen. Corp.,* 684 F.2d 187, 192 (1st Cir.1982). As a general rule, leave to amend is granted liberally. However, there are limitations to the rule.

As a general principle, the general rule of liberality in amendment of the pleadings is applied less liberality when amendments are proposed during or after the trial; and that, as a result, a motion to amend is more likely to be denied if it takes place at a relatively late stage in the proceedings. *See Royal American Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011 (2d Cir. 1989); *James v.*

43

*McCaw Cellular Communications, Inc.*, 988 F.2d 583 (5th Cir. 1993); Jones v. Hamelman, 869 F.2d 1023 (7th Cir. 1989); *Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118 (11th Cir. 1993).

More specifically, a court may deny a motion for leave to amend for a valid reason such as bad faith by the moving party, unwarranted delay, or undue prejudice to the opposing party. *See Foman v. Davis* at 230; *Carter v. Supermarkets Gen. Corp.,* 684 F.2d at 192; *Farkas v. Texas Instruments, Inc.,* 429 F.2d 849, 851 (1st Cir.1970), *cert. denied,* 401 U.S. 974, 91 S. Ct. 1193, 28 L.Ed.2d 324 (1971). Taking into account the foregoing and the facts of this particular case, it is clear that the trial court, acting well within the scope of broad discretion, properly denied Appellant's motion for leave to amend her Complaint.

1. **The district court's denial of Appellant's motion to amend was a valid exercise of the court's discretion given that Appellant's motion was not made in response to an objection to an effort to admit evidence that was outside the scope of the pleadings.**

Appellant had the opportunity to plead the Complaint as she saw fit and ample opportunity to seek to amend the complaint prior to trial of this case. However, she avoided amending the Complaint for strategic and tactical reasons; advised the district court in the Joint Pre-Trial Statement that the only issues that remained to be litigated were issues relating to her claim that Wal-Mart should be held directly liable for the incident at issue; and further locked herself into her chosen strategic and tactical decisions by outlining her claim for the jury in a

44

manner consistent with these allegations and assertions in her opening statement (as discussed previously); and offering the evidence she did in a manner that (though deficient) was clearly meant to support her sole claim against Wal-Mart based on a theory of direct liability.

It was not an objection (by Wal-Mart) to evidence Appellant sought to offer in her case in chief that led Appellant to make her motion to amend under F.R.C.P. 15(b)(1). Instead, it was the fact that Appellant's strategy of targeting Wal-Mart directly had apparently failed *and* that a judgment as a matter of law in Wal-Mart's favor appeared imminent, that prompted Appellant, which had previously avoided pleading or asserted claims other than a claim for direct liability in any way as the result of a **tactical decision** in support of its overall strategy, in a frantic effort to avoid the granting of Wal-Mart's Motion for Judgment as a Matter of Law.

Thus, Appellant's to amend motion was not made in response "objection" to evidence outside the scope of the pleadings. Rather, it was made in an effort to circumvent an impending, adverse decision resulting directly from her failed strategy and tactics. In other words, Appellant's motion was not legitimately premised on Rule. Accordingly, the denial of the motion by the district court, which has broad discretion in deciding such motions, was completely proper.

45

**2. The district court's denial of Appellant's motion was a valid exercise of the court's discretion given Appellant's unwarranted delay in making that motion**

A court may properly deny a motion to amend where the underlying facts of the amendment were known to the moving party well before an amendment was sought; and that party fails to provide an adequate explanation for the delay in asking for leave to amend. *See Figgie Intern. Inc. v. Miller*, 966 F.2d 1178 (7th Cir. 1992). Where the moving party fails to provide an adequate explanation for the delay in asking for leave to amend, the party's lack of diligence in bringing the claim before judgment or the eve of judgment will be found to constitute undue delay. *Id. see also Farr v. Gulf Agency*, 74 So. 3d 393 (Ala. 2011)(undue delay in filing an amendment to a complaint, when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment).

In this case, Appellant did not move to amend her complaint until after the district court had granted Wal-Mart a judgment as a matter of law. At that point, Appellant moved to amend based on no more than her characterization or, more accurately, her mischaracterization of certain portions of the deposition testimony of Wesley Patterson and Eames Josephat. That deposition testimony, which was read into the record at trial, was initially given when Appellant's counsel took the depositions of these two gentlemen **several months** before trial. In other words,

46

Appellant's motion to amend was based on information that was in her possession long before trial; as opposed to any new information learned or testimony elicited at trial. Despite this fact, Appellant gave no reason for the undue delay in raising this motion. That is because, as discussed further in the following, there was no legitimate reason for the delay. Based on the foregoing, the trial court's denial of Appellants' late motion to amend her complaint was a well warranted and appropriate exercise of its discretion.

3. **The district court's denial of Appellant's motion to amend was a valid exercise of the court's discretion given the fact that the Appellant's delay in filing the motion was a tactical decision**

On a separate but related note, a court may also properly deny a motion to amend on the basis of unwarranted delay where the failure to include claims or theories of the case in the original complaint was the result of a strategic or tactical decision. *See e.g. Payton v. Abbott Labs,* 780 F.2d 147 (1st Cir. 1985); *Morrison Enterprises, LLC v. Dravo Corp.*, 638 F.3d 594 (8th Cir. 2011)(district court did not abuse its discretion in concluding plaintiff's **tactical choice** did not demonstrate diligence or good cause for allowing plaintiff to amend its complaint in an effort to defeat/circumvent a summary judgment in favor of the defendant).

In this case, as discussed in the previous, section, the "evidence" upon which Appellant based its motion to amend was evidence it had known from the outset of the case or, at a minimum, from the time she took the depositions of Patterson and

Josephat (i.e. well before trial). Thus, it is clear that Appellant avoiding raising the claims it sought to raise via its late motion to amend (i.e. claims of vicarious liability and res ipsa loquitur) for solely for strategic and tactical reasons. The only real reason Appellant asserted the motion was because its strategy and tactics failed and, as a result, Wal-Mart had obtained a Judgment as a Matter of Law. For this reason too, the trial court's denial of Appellants' late motion to amend her complaint was a well warranted and appropriate exercise of its discretion.

   **4. The district court's denial of Appellant's motion was a valid exercise of the court's discretion because Wal-Mart would have been prejudiced if Appellant had been allowed to amend her complaint and change her theory after Wal-Mart had rested her case and obtained a judgment as a matter of law was granted**

The facts of this case are virtually identical to those of the countless cases that hold that post dismissal motions to amend are disfavored due to concerns over both fairness, judicial economy and finality. *See. e.g. Union Planters Nat'l Leasing Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir.1982). "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim (one after another)." *Id.* (citing *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967).

Further, after summary judgment [or, by logical extension, a motion for judgment as a matter of law] has been granted, the court has "even more reason for refusing to allow amendment." *Id.* At such a point, the concerns of finality in

litigation become more compelling, and **the litigant has had the benefit of a day in court**, in some fashion, on the merits of his claim," *Id.* citing *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 n.2 (5th Cir. 1981). The reasoning of the Courts in the cited cases is compelling; particularly given the added fact that, if Appellant had been allowed to amend her complaint to change her theory after Wal-Mart's motion for directed verdict had been granted, Wal-Mart would have severely and unduly been prejudiced.

First, as a matter of fairness, it would have been improper and highly prejudicial to allow Appellant to file a motion to amend, after Wal-Mart had put on its defense (tailored to the sole claim Appellant pled and presented), rested its case (and could done nothing to defend against Appellant's new, previously unpled and unpresented claims), and obtained a judgment as a matter of law in its favor (discussed further in the following paragraph) on the sole claim Appellant pled and presented. Wal-Mart would undoubtedly have aggressively defended the claims Appellant sought to raise at the "directed verdict stage: if those claims had been raised timely. However, Wal-Mart was denied that opportunity as a result of Appellant's tactics in this case.

The purpose of the rule is to bring the pleadings in line with the actual issues upon which the case was tried **not** to allow a change in the theory on which the case was actually tried. *See e.g. See e.g. Brown v. Cooper Clinic, P.A.*, 734 F.2d

1298 (8th Cir. 1984)(denying motion to amend complaint following grant of a directed verdict for the clinic to allege a theory that the case had not been tried on)(citations omitted). Thus, in this case, it would have been improper to allow the requested amendment; particularly where the change in theory is based on evidence that was in Appellant's possession long before trial.

Second, the value of a motion for directed verdict and the entire trial process would be undermined if a plaintiff were allowed to try her entire case on a one theory in an attempt to obtain a favorable verdict and then, should that theory prove unsound when tested via motion for judgment as a matter of law, be allowed to come back and fight on the basis of some other theory. Because Wal-Mart committed to defending the case based on the theory Appellant pled and presented successfully did so, it was entitled to the benefit of finality in the judgment it obtained; and would have begin unfairly prejudiced if Appellant had been allowed to avoid the folly of her failed theory by substituting a new one after the entry of judgment in Wal-Mart's favor and forcing Wal-Mart to re-try her case one or more times (until she received a what she considered to be a favorable result).

For these reasons and the others explained previously herein, it is clear the district court did not abuse its discretion in denying Appellant's motion to amend her complaint; particularly where the plaintiff could have made the motion Wal-Mart rested its case, but made a strategic and tactical choice not to do so.

50

**B.    THE TRIAL COURT ACTED WITHIN ITS DISCRETION IN DENYING APPELLANT'S MOTION TO AMEND HER COMPLAINT UNDER F.R.C.P 15(b)(2)**

Based on the facts of this case, Appellant was not entitled to amend her Complaint pursuant to the terms of F.R.C.P. 15(b)(2). Therefore, the trial court did not err in denying Appellant's motion to amend her complaint based on that Rule. F.R.C.P. 15(b)(2), which governs Amendments During and After Trial, *"For Issues Tried by Consent,"* states:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Applying this rule and the decisional law relating to it to the facts of this case, it is clear the trial court correctly denied Appellant's motion for leave to amend her complaint based on F.R.C.P. 15(b)(2).

**1. Wal-Mart did <u>not</u> expressly or implicitly "consent" to the trial of the unpled and unpresented claims Appellant sought to amend her complaint to add**

In her Initial Brief, Appellant asserts conclusorily that Wal-Mart "consented to the trial of the issue of general negligence on behalf of its employees" (I.B. at 41). Via this statement, Appellant presumably means to assert that Wal-Mart "consented" to the trial of claims based on vicarious liability and/or the doctrine or respondeat superior. However, the record evidence simply does not support that

51

claim. Appellant goes on to assert that "[d]uring opening statement, counsel for Appellee made several admissions to that effect" (I.B. at 41); and cites to several statements made by Counsel for Wal-Mart during his opening statement that she seeks to convince this Court were admissions by Counsel for Wal-Mart that amount to express or implicit "consent" to the trial of Appellant's unpled and late asserted claims.

Wal-Mart invites the Court to review each and every one of those statements cited by Appellant; and respectfully asserts that such a review will reveal that none of those statement even comes close to an "admission" that Wal-Mart consented to try Appellant's unpled and untimely raised claims. Wal-Mart respectfully asserts that such a review will reveal that the statements made by Counsel for Wal-Mart during his opening statement, which focused on the concept of "reasonableness" and whether Wal-Mart (the entity Appellant was trying to hold directly liable for negligence) acted reasonably, were statements that were meant to and did counter the (direct liability) claim that Appellant pled in her Complaint and advanced in her opening statement and throughout her case.

Further, such a review will reveal that none of the statements made by Wal-Mart's Counsel in his opening and cited by Appellant in her Initial Brief mention the actions of an employee or even hint at an attempt to defend a claim or claims based on the unpled and unpresented concept of "vicarious liability," "res ipsa

52

loquitur," or even "general negligence" (i.e. none of the statements made by Counsel for Wal-Mart during his opening statement amounted to "clear and unambiguous admission[s] of fact" that would establish in any way that any of Appellant's later/untimely raised claims was being tried by the parties by consent.

## 2. The trial court did not abuse its discretion in determining Appellant's unpled claims were <u>not</u> tried by consent

The decision whether the issue has been tried by express or implied consent is a matter within the trial court's discretion and will not be reversed except upon a showing of abuse. *See. e.g. Craft v. U.S.*, 233 F.3d 358, 371 (6th Cir. 2000)(citing Wright, Miller & Kane), *rev'd and remanded on other grounds*. This case was tried under a direct liability theory; as opposed to any of the theories Appellant sought to amend her complaint to raise.

Therefore, the district court, which expressly found that the unpled claims Appellant sought to amend her complaint to raise had not been tried (e.g. claims based on vicarious liability and res ipsa loquitur), did not err in denying Appellant's motion to amend her complaint to add these theories following or in the face of the impending grant of a motion for directed verdict. *See e.g. Brown v. Cooper Clinic, P.A.*, 734 F.2d 1298 (8th Cir. 1984)(In action brought by a doctor against a clinic for a portion of the accounts receivable after he terminated his employment, the trial court did not abuse its discretion in denying the motion, following the grant of a directed verdict for the clinic, to amend the pleadings to

53

allege unjust enrichment when the court found that the case had not been tried on an unjust-enrichment theory).

## D. THERE WAS NO LEGITIMATE BASIS UPON WHICH THE TRIAL COURT COULD HAVE GRANTED APPELLANT'S MOTION FOR CONTINUANCE

Based on the facts of this case, Appellant was not entitled to a continuance to allow amend her Complaint pursuant to the terms of F.R.C.P. 15(b). Therefore, the trial court did not err in denying Appellant's motion for continuance to allow her to amend her Complaint. Appellant's Motion for Continuance to allow her to amend her Complaint was literally made as a last ditch effort to avoid the failure of the theory of the case she proceeded under from the outset. The motion was made after the trial court had already heard argument on and denied Appellant's motions for leave to amend the Complaint under F.R.C.P. 15(b); as discussed previously.

Appellant's motion to continue had no more merit than the motions to amend that preceded it, and was, quite simply, made far too late (after an unwarranted delay and after she had her day and court and failed, due to her own strategic and tactical choices, to succeed on her claim). Appellant cites case law that stands for the proposition that every person is entitled to her day in court; and that procedural niceties should not deprive a person of her day in Court I.B. at 45). However, she is oblivious to or chooses to ignore the fact that she had her day in court (a litigant is not denied her day in court simply because she loses her case on

54

a dispositive motion such as a summary judgment of judgment as a matter of law). *See. e.g. Union Planters Nat'l Leasing Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir.1982); D*ussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 n.2 (5th Cir. 1981)(a litigant that loses a case on a dispositive motion "**has had the benefit of a day in court, in some fashion, on the merits of his claim**")(emphasis added).

Moreover, she chooses to ignore the fact that she did not lose her case as a result of a failure of the judicial system (i.e. as a result of "procedural niceties") but as a result of her strategic choice to proceed from the outset solely and exclusively under a direct liability theory she ultimately could not prove; and the tactics she chose in an effort to advance that strategy/theory to the exclusion of all others. A litigant is not entitled to try a case based on a carefully chosen strategy, then claim an entitlement to re-try the case again (and again) simply because she does not like the result she achieved. *See. e.g. Union Planters Nat'l Leasing Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir.1982)(addressing the proper denial of a motion to amend made after summary judgment was granted and stating "[a] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim").

Appellant asserts that a trial court should "freely grant a request for continuance made under this rule." As for the reasons discussed previously herein, a trial court's discretion to grant a continuance, like its discretion to grant leave to amend a complaint decreases as a trial proceeds for the reasons discussed in the

55

previous section; and such leave should not be freely granted where it is requested solely in an effort to avoid an adverse judgment following the presentation of the case it pled and presented at trial.

## CONCLUSION

Based on all of the foregoing, Wal-Mart respectfully asserts that this Court should reject the arguments asserted by Appellant, affirm the district court's grant of Wal-Mart's motion for judgment as a matter of law and its denial of Appellant's motions to amend or for continuance, and deny and dismiss this appeal.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Thomas A. Valdez
Thomas A. Valdez, Esquire
4905 W. Laurel Street, Suite 200
Tampa, Florida 33607
813-286-8818 (Telephone)
813-286-9998 (Facsimile)
tvaldez@qpwblaw.com
Florida Bar No.: 0114952
*Counsel for Appellee - Wal-Mart Stores, Inc.*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13, 961 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I FURTHER CERTIFY that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

/s/ Thomas A. Valdez
Thomas A. Valdez, Esquire

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was electronically filed with the Clerk of the United States Court of Appeals, Eleventh Circuit by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and that a copy of the foregoing was furnished by electronic mail to: **Billie Jo Belcher, Esquire**, billiejo@salzmannfirm.com, The Salzmann Firm, 701 E. Washington Street, Orlando, FL 32801 (Appellant's counsel) on this 28th day of August 2013.

/s/ Thomas A. Valdez
Thomas A. Valdez, Esquire

57